ADA LANAUSSE, Plaintiff and Appellant, *v.* ROSITA SILVA, Defendant and Appellee.

No. 131. Decided February 26, 1962.

---

*Jorge V. Toledo* and *José Nilo Dávila Lanausse* for appellant. *E. Ramos Antonini* and *Alvaro Ortiz* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Ada Lanausse, a married woman, agreed to purchase from Rosita Silva a house for the sum of $14,000. The purchaser would pay $5,000 in cash from her separate funds[1] and would assume payment of a $5,000 mortgage which en-

---

[1] The brief for the vendor, appellee herein, discusses the question raised by this appeal as if it had not been established that the character of the $5,000 initial payment was not separate. But the truth is that that fact was admitted by stipulation of the parties, and neither the judgment of the trial judge nor this appeal would be justified if such fact had not been admitted. The attorney for the appellant himself asserted at the hearing at which the stipulation was approved that "it is as if the evidence had been offered at the trial today, and the question of law were being argued on that evidence."

cumbered the real property. Payment of the remaining $4,000 would be deferred and secured by the constitution of a second mortgage on the real property object of the contract.

When everything was ready for the execution of the deed, the vendor refused to sign. She alleged that the appearance of the purchaser's husband was necessary. The latter alleged that it was not. Thereupon she brought this action to compel specific performance of the agreement, and also claiming $1,500 [2] for damages sustained. The vendor counterclaimed for $3,000 damages allegedly sustained as a result of the failure to carry out the transaction with the appearance of the purchaser's husband.

By stipulation, the parties submitted the question whether the purchaser needed her husband's consent to assume the existing mortgage and to contract the deferred price obligation and to constitute a second mortgage to secure payment thereof. The trial judge concluded that she did.

Section 61 of the Spanish Civil Code, in force in Puerto Rico until the enactment of the Revised Civil Code, provided that "neither may the wife, without the permission of her husband, or a power of attorney from him, acquire property for a good or valuable consideration, alienate her property, or contract obligations except in the cases and with the limitations established by law." The Revised Civil Code omitted this provision and provided, on the contrary, in § 160, counterpart of § 92 of the 1930 ed., 31 L.P.R.A. § 285, that "the husband and the wife shall have the right to manage and freely dispose of their respective separate estates"; and by § 161, § 93 of the 1930 ed., 31 L.P.R.A. § 286, it provided in its pertinent part that "the wife may contract, and appear in court, in all cases referring to the defense of her own rights and property . . ."

_____

[2] According to amendment made at the pretrial conference.

■■ Thus, we see that, following a liberal tendency to establish equality between the sexes, the wife's capacity to contract was consecrated in our Code.[3] *Soc. Protectora de Niños* v. *Registrar of San Juan*, 29 P.R.R. 909 (1921). In *Fuster* v. *Paonesa*, 43 P.R.R. 729 (1932), we recognized the capacity of a married woman to borrow money without her husband's consent. To that effect, we said at p. 733:

"Whether the loan is based upon the faith and credit of the wife's separate estate is immaterial because her capacity to contract is not limited to matters affecting her separate estate. She may have no separate estate. Nor need she first establish herself in any profession, business or occupation. She may borrow, if she can, on the lender's estimate mistaken or otherwise of her personal honesty and integrity, of her sound business judgment, of her hold on the affections of her husband, of the possibility of a bequest in the will of some opulent relative or of any other prospect more or less remote as to future ability to pay. Neither the motive of the lender nor the source to which he looks for payment is important. When he sues upon the note he need not allege either that it was given with the consent of the husband or that the transaction affected the wife's separate property because neither of these things is essential to the validity of the wife's personal obligation."

To the same effect, *E. Solé & Co., S. en C.* v. *Sepúlveda*, 41 P.R.R. 807 (1931); *Sociedad Protectora* v. *Registrar, supra.*

■ It has also been established that a married woman may acquire real property during the marriage, provided the

---

[3] Rule 15.3 of the Rules of Civil Procedure of 1958 provides as follows:

"A married woman needs the consent of her husband except:

(a) When the action concerns her separate property or her right to a homestead;

(b) When the action is between herself and her husband;

(c) When she is living separate and apart from her husband by reason of desertion of either spouse;

(d) When the husband and the wife are sued jointly, in which case she may assert her own right; and if the husband fails to defend himself, she may also assert his right;

(e) When otherwise provided by statute."

separate character of the acquisition is set forth in the deed and is indisputably identified. *Babilonia* v. *Registrar*, 62 P.R.R. 661 (1943) ; *Capó* v. *Registrar*, 46 P.R.R. 506 (1934) ; *Sojo* v. *Registrar*, 35 P.R.R. 785 (1926) ; *Peraza* v. *Registrar*, 30 P.R.R. 496 (1922) ; *Sociedad Protectora* v. *Registrar*, *supra; Sánchez et al.* v. *Registrar of San Juan*, 28 P.R.R. 624 (1920) ; *Schroder* v. *Registrar of Caguas*, 28 P.R.R. 175 (1920) ; *Fernández Pérez* v. *Registrar of Caguas*, 26 P.R.R. 673 (1918) ; *Batista* v. *Registrar of Property*, 21 P.R.R. 78 (1914) ; *Feliú et al.* v. *Registrar*, 16 P.R.R. 728 (1910).

██ Having established that a married woman may contract obligations as well as acquire real property without the husband's consent, we turn to consider the question raised in this case. Is the husband's consent necessary when the wife purchases real property and pays part thereof from her separate funds, and in order to secure payment of the balance of the price she contracts the obligation to pay off a lien which encumbers the real property and constitutes a second mortgage? We believe such consent is not necessary. In the instant case the wife agreed to pay $5,000 in cash from her separate funds. She contracted the obligation to pay the remaining $9,000—$5,000 on a mortgage which encumbered the real property and $4,000 which she would still owe and would secure by a second mortgage—and if it would eventually be paid off from money of the community partnership or from the husband's separate estate that entity or the husband, as the case might be, would then have a credit which would be paid off at the proper time upon liquidation of the community partnership. *Cf. Santiago* v. *Tax Court*, 69 P.R.R. 282 (1948). The real property does not lose its separate character because of the fact that the purchaser owes the balance. If the purchaser fails to tender payment on its due date, the vendor may foreclose the mortgage in order to collect her credit without the intervention of the community

partnership. See Rule 15.3 of the Rules of Civil Procedure of 1958, copied in footnote 3.

In the case of *Vaquer* v. *Registrar*, 60 P.R.R. 706 (1942), we considered a situation somewhat similar to that under consideration—exchange of wife's separate property for a property having a greater value and mortgage to secure payment of the excess—and in deciding the same we said at p. 713:

"We should not be understood as holding that if the mortgage were paid with funds belonging to the conjugal partnership, the latter would derive no right therefrom, for it would.

"Just as, under § 1304 of our code, any useful expenditures made for the benefit of the separate property of either one of the spouses by means of advances made by the partnership, are partnership property, if the mortgage constituted by Victoria Vaquer on her separate property—property No. 1—acquired by inheritance and by exchange for other separate property belonging to her, should be paid with funds belonging to the partnership property, the advances made should be credited to the partnership, but this fact would not change the status of the property as separate property released from the encumbrances which burdened it."

The appellee invokes our decisions in *Capó* v. *Registrar*, 46 P.R.R. 506 (1934), and *Pérez* v. *Hawayeck*, 69 P.R.R. 46 (1948). Neither of them lends her any help. In the former, we concluded that the real property sought to be acquired was not separate property because it had not been established, contrary to the situation in the case at bar, that the initial payment was made from the wife's separate funds. In the latter, the funds from which the initial amount was paid belonged to the community partnership.

■ In discussing the exchange of dowry and paraphernal property, Manresa considers a situation touching the problem before us. He refers to the exchange of paraphernal or dowry property—for the purposes of the case, he maintains that it is the same—for one of greater value, the excess being

paid from property of the community partnership or from the separate property of the other spouse. Manresa maintains that the property acquired by exchange continues to be separate property. He states as follows at p. 281:

"If the property acquired by exchange is worth more than the property given, the community partnership must pay the difference in cash. Such cash may come from the husband's separate capital, from that of the wife, or from the community property. Is it to be understood that the excess of the value of the property, namely, the undivided interest which it represents, belongs to the party furnishing the cash? We believe not: first, because § 1337, without establishing distinction, provides that in the event of exchange the real property acquired substitutes the property given in exchange, and has, like the latter, the character of dowry; second, because the law is reluctant to the indivision, and the indivision would result if the excess of the value of the property exchanged belonged either to the husband, or to the community. But since it would not be fair if the woman would enrich herself at the expense of the husband, or of the partnership, and since to dispense with the source of the cash would be tantamount to permitting during the marriage donations between th e spouses, from the exchange in the case stated, a credit necessarily arises in favor of the person or entity furnishing the cash, other than the wife, whose credit must be taken into account at the proper time upon liquidation of the community partnership. If the excess was paid with the dowry funds, there is no problem." 9 Manresa, *Comentarios al Código Civil Español* 281 and 548 (5th ed. 1950).

See, also, *Hernández Usera v. Registrar of San Juan*, 31 P.R.R. 84 (1928); *Cot v. Registrar of Property*, 15 P.R.R. 470 (1909); 6 Colin y Capitant, *Derecho Civil* 189 (1955); *cf.* 5 Castán, *Derecho Civil Español* 219 (1954).

It is therefore clear that the facts of this case establish that the property which the appellant seeks to acquire continues to be separate property, and that the husband's consent was not necessary for the purpose of contracting the obligations which the agreed transaction entails.

The judgment appealed from rendered by the Superior Court, San Juan Part, on March 6, 1959, will be reversed and the case remanded for further proceedings consistent with the holding herein.